### Commonwealth v. Blumberg

*Anthony L. Differ*, for prosecutrix.

*William O'Hey, Jr.* and *Henderson, Wetherill & O'Hey*, for defendant.

HONEYMAN, J., February 7, 1961.—Prosecutrix in this action filed a petition praying that defendant,

Leon Blumberg, be adjudged in contempt of court for his failure to continue to make payments on a support order after the minor child of the parties attained the age of 18 years. An answer to the petition was filed and the matter set down for hearing. In effect, the matter is treated by both counsel and the court the same as a petition to vacate the support order.

On May 18, 1959, the order was originally entered against defendant in the sum of $165 per week for the support of wife-prosecutrix, and the minor daughter of the parties, Barbara Blumberg. Subsequent to the parties being divorced, on June 29, 1959, the order was reduced to $45 per week for the support of the minor daughter only. On June 17, 1960, subsequent to the graduation from high school of the minor daughter, in accordance with prevailing administrative practice in the desertion office, a termination form was sent to prosecutrix for signature. She refused to sign same. On August 21, 1960, the minor daughter attained the age of 18 years. Defendant made the last payment on account of this order on August 19, 1960, and at that time there were no arrearages existing. To all intents and purposes the chief desertion officer of the county treated the order as vacated. There then followed the instant petition. The question before the court raised by the petition and answer is whether the facts which appear of record in this proceeding as well as the facts developed at the hearing are sufficient to cause this order of support to remain in full force and effect, despite the fact that the minor daughter has attained the age of 18 years and has completed her high school education.

Defendant is a medical doctor in general practice in this county and has been for many years. The minor daughter, Barbara, after her graduation from high school in June 1960, worked as a counselor at a sum-

mer camp and in September 1960 enrolled as a freshman student at Cornell University, Ithaca, N. Y., specifically taking the commercial art course. Throughout her high school education, defendant showed a normal interest in Barbara's school work, urged her to achieve a good scholastic standing and participated in conferences with the guidance counselor at the high school concerning her proposed college art course. Neither before nor after the separation of the parties was there any specific understanding or agreement between or among prosecutrix, Barbara and defendant concerning his payment of her expenses at college. Prosecutrix testified that it was always assumed or implied that he would do so, and that he encouraged Barbara to enroll at Cornell University, of which institution defendant was a graduate. Barbara has no physical nor mental infirmities. Barbara's paternal grandmother has died recently and Barbara is a one-fourth income beneficiary of a trust created under the grandmother's will in the amount of approximately $90,000. In addition, the grandmother, in her lifetime, reserved United States Savings Bonds in the amount of $11,000 for Barbara with defendant as custodian thereof, but there is nothing in writing concerning the grandmother's intent concerning these bonds, and defendant is incompetent to testify as to the deceased grandmother's verbal intentions, despite his efforts so to testify at the hearing. Barbara has made no efforts to obtain employment, and she is not equipped with any specific training or skills with which to enter the labor market. Her expenses at Cornell University approximate $2,500 per annum. The relationship between Barbara and defendant has become strained.

Counsel for prosecutrix and defendant cite numerous decisions of the Pennsylvania Superior Court as authority for their respective positions. The court has reviewed with care all of these cases as well as a recent

decision of President Judge Gawthrop of the Chester County Court. There is no hard and fast rule which the Superior Court has laid down concerning the termination of the duty to support by a father after a child has attained the age of 18 years. The case of Commonwealth v. Wingert, 173 Pa. Superior Ct. 609 (1953), succinctly reviews many of these cases. Therein Judge Wright says as follows, at page 616:

"The purpose of a support order is to secure a reasonable allowance for the support of the child or children, always having in mind the property and earning capacity of the father and the station in life of the parties: Com. v. Elliott, 157 Pa. Superior Ct. 619, 43 A. 2d 630. The court may require the father to provide his minor children with such education in the public schools, beyond the minimum required by law, as reasonably accords with the father's financial ability, and with the children's ability, progress and prospects: Com. v. Gilmore, 97 Pa. Superior Ct. 303; Com. v. Nolan, 111 Pa. Superior Ct. 174, 169 A. 247; Com. v. Campbell, 128 Pa. Superior Ct. 72, 193 A. 119; Com. v. Lawson, 153 Pa. Superior Ct. 446, 34 A. 2d 268. Additional support for the special schooling of a mentally retarded child may be warranted: Com. v. Horner, 168 Pa. Superior Ct. 411, 77 A. 2d 641; Com. ex rel. Goldenberg v. Goldenberg, 159 Pa. Superior Ct. 140, 47 A. 2d 532. And a father may be required to continue the support of a child who, though sound physically and mentally, is otherwise unemployable: Com. ex rel. Nicholson v. Groff, 169 Pa. Superior Ct. 12, 82 A. 2d 536. However, there are no appellate cases in Pennsylvania wherein the facts have been held to justify an order of support for a child attending college. See Com. ex rel. Gillen v. Gillen, 102 Pa. Superior Ct. 136."

Since the foregoing decision, the Superior Court has sustained support orders which direct fathers of minor

children to support them during enrollment in college. These are the cases of Commonwealth ex rel. Grossman v. Grossman, 188 Pa. Superior Ct. 236 (1958), and Commonwealth ex rel. Stomel v. Stomel, 180 Pa. Superior Ct. 573 (1956). However, in both of these cases, the court found as a fact that defendant specifically agreed to continue support while their minor children enrolled in college.

Commonwealth ex rel. Nicholson v. Groff, 169 Pa. Superior Ct. 12 (1951), and Commonwealth ex rel. Groff v. Groff, 173 Pa. Superior Ct. 535 (1953), are the same case on two appeals from successive orders of the lower court continuing an order of support for a minor daughter over the age of 18 years. However, the significant fact which prompted the court to continue the order of support therein was the finding of fact that the daughter was psychologically unsuited for employment and that she was unemployable because of her inability to grasp the realities of life, even though she appeared to be normal and healthy.

Counsel for the prosecutrix urges the court to adapt the rationale of the court in Commonwealth v. Gilmore, 97 Pa. Superior Ct. 303 (1929), to the facts of the instant case. Therein under the existing law at the time of this decision, support orders normally ran only to the age of 16 years. The Superior Court sustained the lower court in continuing an order of support for a minor child after age 16 on the basis that it was in the best interest of the State as well as the child to permit him to complete his high school education. Therein, the court said as follows, at page 312:

"Marriage is not a merely private institution but is one in which the State has a real and definite interest. By its laws the State supervises and controls the formation of the actual contract of marriage, defines the status, rights and obligations of the parties thereto,

regulates the methods of dissolution of the marriage bond, and declares the rights and duties of the parties, or surviving party, after the termination of the marriage state. The State's interest in marriage rests upon a sound public policy, which is founded not only upon the regulation of the morals of the people but more especially upon the State's basic concern in the rearing of children. In a republic where every adult citizen has a share in public affairs, it becomes essential for the preservation of the State and the happiness of the people, that the citizens be acquainted with public affairs and be intelligent and to that end be educated to the highest extent possible. This being so it is highly proper that the law should, in the matter of the support of minors, adopt such rule as will work to the benefit of the State and the public rather than the convenience of a particular individual. The general benefit to be obtained by continuing an order for the support of a minor child to the end that such child may receive a common school education greatly outweighs that derived from the relief of the father, when able, from the payment of the order. Upon principle, therefore, it would seem that we are warranted in adopting a rule, similar to that in force in other counties of this State, and in refusing to revoke an order for the support of a minor son who, although upwards of 16 years of age, is genuinely endeavoring to get an education in our public schools, where the father is of sufficient ability to continue the payment of said order."

The court in Commonwealth v. Campbell, 128 Pa. Superior Ct. 72 (1937), on similar facts, followed the Gilmore case.

It is contended, on behalf of prosecutrix and the minor daughter, that the increased emphasis upon college education for every deserving student in the years since the Gilmore decision now requires the

court, at this time, to extend the principles enunciated in the Gilmore case to situations involving facts such as in the instant case. President Judge Gawthrop, of the Chester County court, in the case of Commonwealth v. Byerly, 21 D. & C. 2d 92 (1960), has, in effect, done so. However, he does not cite the Gilmore case, but rather distinguishes this case from the Wingert case. He finds that, on the authority of the first Groff case, the burden of proof is upon defendant to prove that a minor child over the age of 16 years is, in fact, earning a supporting wage or that he is both capable of doing so, and that employment at a supporting wage is actually available to him in his community. With this, I cannot agree. It would seem far more logical to impose that burden upon prosecutrix and/or the minor child over 18. It is very laudable for a parent or parents to provide for their children every educational opportunity possible. However, absent an express and enforceable agreement so to do, this court does not feel constrained to make it a matter of compulsion for a father to provide a college education for a child over the age of 18 years who has no mental or physical infirmities. Furthermore, there are funds available in this case to meet the minimum financial demands of Barbara's education at Cornell University, and defendant, as custodian of these funds, has testified before this court that same will be, or are presently, available for financing her college education. It is true that Barbara is not specifically trained for any particular line of endeavor, and, if she were compelled to go into the labor market, that she would probably be limited to employment as a salesgirl or as a waitress. The likelihood of her having to do so seems, under the facts, rather remote. The court, therefore, finds that defendant has discharged his legal duty and responsibility for the support of Barbara at the present time. Therefore, the following order is entered.

*Order*

And now, February 7, 1961, the petition to adjudge defendant in contempt of court for his failure to continue payments under this support order is hereby dismissed and the order of support dated June 29, 1959, is vacated.